UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROCKFISH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNIDENTIFIED WRECKED AND ABANDONED VESSEL,<br><br>Defendant. | CASE NO. C22-1659JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court are (1) Plaintiff Rockfish, Inc.'s ("Rockfish") motion for partial summary judgment dismissing Claimant Donald W. Foster's claims to the *S.S. Pacific*'s cargo (Rockfish MSJ (Dkt. # 156); Rockfish Reply (Dkt. # 165)); and (2) Mr. Foster's motion for summary judgment dismissing Rockfish's claims to a salvage award and title under the law of finds and dissolving the preliminary injunction granting Rockfish exclusive salvage rights (Foster MSJ (Dkt. # 159); Foster Reply (Dkt. # 166)). Each

party opposes the other's motion. (Rockfish Resp. (Dkt. # 160); Foster Resp. (Dkt. # 161).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Mr. Foster's motion for summary judgment, DENIES Rockfish's motion for partial summary judgment, and ORDERS Rockfish to show cause why its remaining declaratory judgment claim should not be dismissed for lack of subject-matter jurisdiction.

## II. BACKGROUND

Rockfish initiated this action in November 2022, asserting that in the summer of 2021 it had located the remains of the 19th century side-wheel steamer *S.S. Pacific* (the "Vessel"). (Compl. (Dkt. # 1) ¶¶ 2.1, 2.2, 3.5.) The Vessel, which carried 270 passengers and a cargo that included gold, sank on November 4, 1875, following a collision with the sailing vessel *Orpheus*. (*Id.* ¶ 3.2.)

Rockfish, a Washington corporation, was created in 2016 to locate, recover, and preserve the history of the *S.S. Pacific*. (*Id.* ¶ 2.1.; *see also id.* ¶¶ 3.3-3.5 (summarizing Rockfish's efforts between 2016 and 2021 to locate and salvage the *S.S. Pacific*).) On November 21, 2022, Rockfish moved under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions for the issuance of an arrest warrant for the Vessel and artifacts recovered therefrom. (Salvage Mot. (Dkt. # 3) at 1.) On November 23, 2022, the court determined that Rockfish had satisfied the conditions for an *in rem* action, appointed Rockfish as substitute custodian of the Vessel, granted it

[1] Neither party requests oral argument. The court concludes that oral argument would not aid in its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

exclusive salvor rights, and permitted the company to undertake salvage operations. (11/23/22 Order (Dkt. # 7) ¶¶ 6-7, 11; *see also id.* at Ex. 1 (Vessel Arrest Warrant); Westrick Decl. (Dkt. # 5 (sealed)) (detailing the evidence Rockfish relied upon to identify the wreckage as the *S.S. Pacific*).) The court also required Rockfish to (1) provide a salvage plan within 90 days; (2) file periodic status reports "describing the status of [] salvage operations[;]"[2] and (3) publish notice of the arrest. (11/23/22 Order ¶¶ 12-16.) In December 2022, Rockfish filed sworn statements of publication of the Vessel's arrest in two newspapers. (12/13/22 Aff. (Dkt. # 15); 12/19/22 Aff. (Dkt. # 16).) On March 6, 2023, Rockfish filed its salvage plan under seal. (Salvage Plan (Dkt. # 48 (sealed)).) The plan set forth a five-phase investigation, excavation, and recovery effort spanning four years. (*Id.* at 8-14 (detailing each of the five phases).)

On January 9, 2023, Mr. Foster filed a statement of right in the cargo of the *S.S. Pacific*. (Foster Claim (Dkt. # 23).) He later amended his claim.[3] (Foster Am. Claim (Dkt. # 27).) Mr. Foster asserts that he is the great-great grandson of Francis John Garesche ("Garesche"), a passenger who perished in the sinking of the Vessel. (*Id.* at 1.) According to Mr. Foster, "[b]usiness entities owned or controlled by Garesche owned or had an interest in cargo aboard the [V]essel." (*Id.* at 2.) Mr. Foster further claims that he

---

[2] Rockfish complied with the court's reporting requirement. (*See* Dkt. ## 41, 67, 69, 74, 81, 86, 88, 102, 117, 128, 130, 144, 150, 151, 152, 164.)

[3] Mitchell S. Moody, London Market Insurers Resolute Management Ltd. ("LMI"), the United States of America ("USA"), and Nancy Spencer also filed statements of interest in the Vessel's cargo. (Moody Claim (Dkt. # 20); LMI Claim (Dkt. # 29); USA Claim (Dkt. # 31); Spencer Claim (Dkt. # 131).) The parties later stipulated to substitute LMI for AXA Insurance UK PLC. (3/30/23 Order (Dkt. # 53).) Because resolution of these claims is not material to the motions before the court, the court does not address them in this order.

"is a successor in interest to those business entities" and has "an interest in the right to recover the remains and personal effects of Garesche in the event those remains are located." (*Id.*) Mr. Foster answered the complaint on January 30, 2023. (Foster Ans. (Dkt. # 24).)

On February 7, 2023, Rockfish moved under Supplemental Rule C(6)(a) for default against all claimants who had not timely filed claims in this action. (MFD (Dkt. # 33).) The Clerk entered default the next day. (2/8/23 EOD (Dkt. # 38).) Rockfish filed an amended complaint on March 30, 2023, seeking: (1) a salvage award; (2) title under the law of finds; (3) an injunction granting it exclusive salvor rights; and (4) a declaratory judgment that Rockfish holds ownership and possessory rights in the Vessel by assignment from the successors in interest of the *S.S. Pacific*'s original owner. (Am. Compl. (Dkt. # 54) ¶¶ 4.1-7.3.) On May 17, 2023, the court granted Rockfish's motion for default judgment against all claimants who were in default and had not asserted claims in this action. (5/17/23 Order (Dkt. # 65); *see also* Default Judgment (Dkt. # 66).)

On November 30, 2023, Rockfish moved for a preliminary injunction to extend its exclusive salvage rights and enjoin competing salvage operations. (11/30/23 MPI (Dkt. # 75).) The court granted the motion on December 22, 2023. (12/22/23 Order (Dkt. # 78).) On January 25, 2024, Rockfish and LMI filed a stipulated motion incorporating their settlement agreement (the "Settlement Agreement"), which resolved LMI's ownership claims to the Vessel's cargo and permitted LMI to retain another salvor if Rockfish's operations proved unsuccessful after seven years. (Stip. Mot. (Dkt. # 79).) The court granted the motion the following day. (1/26/24 Order (Dkt. # 80).) On

November 18, 2024, however, LMI moved to dismiss the action and vacate the Settlement Agreement, arguing that because Rockfish had not located the *S.S. Pacific*, it lacked a basis to assert a salvage lien against the insurer's gold cargo; Mr. Foster joined the motion. (LMI MTD (Dkt. # 98) at 2.) The court denied the motion on February 12, 2025, characterizing the salvage-success challenge as premature because Rockfish need not prove success at the motion to dismiss stage. (2/12/25 Order (Dkt. # 116) at 9 n.4.) The court further concluded that the factual disputes raised by LMI were intertwined with the merits and "must await trial" and declined to set aside the Settlement Agreement. (*Id.* at 15, 19.)

On March 25, 2024, the court granted Rockfish's motion for an order expanding the geographic boundaries of the area in which the court had enjoined competing salvage operations. (3/22/24 Mot. (Dkt. # 82); 3/25/24 Order (Dkt. # 85).) On March 14, 2025, the court entered an order setting trial for January 25, 2027. (3/14/25 Order (Dkt. # 123).) On April 16, 2025, Rockfish again moved to extend its exclusive salvage right in the Vessel and enjoin competing salvage operations. (4/16/25 Mot. (Dkt. # 125).) The court granted the motion on June 13, 2025, and set the injunction to expire on January 25, 2027. (6/13/25 Order (Dkt. # 129).) Rockfish filed an updated salvage plan on November 7, 2025. (2d Salvage Plan (Dkt. # 140).)

In October 2026, Rockfish and Mr. Foster filed the instant cross-motions for summary judgment. (Rockfish MSJ; Foster MSJ.) The motions are fully briefed and ripe for the court's consideration.

## III. ANALYSIS

The court first sets forth the governing legal standard before turning to the parties' cross-motions.

### A. Legal Standard

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The movant bears the initial burden of identifying record evidence that shows the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of persuasion at trial, the movant must either negate an essential element of the claim or defense or show that the nonmovant lacks sufficient evidence to meet its burden. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant satisfies this burden, the nonmovant must produce specific evidence establishing a genuine factual dispute; otherwise, summary judgment is warranted. *Id.* at 1103; *Celotex Corp.*, 477 U.S. at 323.

In evaluating the motion, the court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in its favor. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). The party opposing summary judgment, however, must direct the court's attention to "specific, triable facts." *S.*

*California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *City of Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B. The Court Grants Mr. Foster's Motion for Summary Judgment.**

Mr. Foster moves to dismiss Rockfish's claims for a salvage award and title under the law of finds and to dissolve the injunction granting Rockfish exclusive salvor rights. (Foster MSJ at 2.) For the reasons set forth below, the court grants the motion.

1. Maritime Salvage Claim

To establish a valid maritime salvage claim, a plaintiff must prove three elements: (1) property in peril on navigable waters; (2) voluntary services rendered without an existing duty; and (3) success in whole or in part. *The Sabine*, 101 U.S. 384, 384 (1879). "Proof of success, to some extent, is as essential as proof of service." *Id.*; *see also Bartholomew v. Crowley Marine Servs., Inc.*, 337 F.3d 1083, 1085 (9th Cir. 2003) (noting that a salvage award is available "only where salvage is successful"). Under salvage law, "success" means the "preservation of the property for the benefit of the owner." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1115 (9th Cir. 1998) (quoting 3A Martin J. Norris, *Benedict on Admiralty* § 90 (7th ed. 1993)). Although total recovery of a vessel or its cargo is unnecessary, the salvor must demonstrate tangible success directly attributable to its efforts. *Id.* at 1115 (affirming a salvage award where the salvage effort "lessened the impact" of a disabled barge and tug "slamming" into one another in a

storm). This requirement reflects the core policy of admiralty law, which grants a salvage award "not in the way of a mere quantum meruit for work and labor performed, but as a bounty given on grounds of public policy to insure safety of property and life at sea" and "to save and restore property to its owners[.]" *St. Paul Marine Transp. Corp. v. Cerro Sales Corp.*, 332 F. Supp. 233, 238 (D. Haw. 1971), *aff'd*, 505 F.2d 1115 (9th Cir. 1974) (citation and internal quotation marks omitted).

Mr. Foster asserts that the court must dismiss Rockfish's salvage claim because it has not demonstrated success as a whole or in part. (Foster MSJ at 6-8; Rockfish Resp. at 5-6.) He contends that "[a]fter nearly four years of litigation and twenty expeditions, Rockfish has recovered nothing beyond a piece of wood and an alleged firebrick" and thus improperly predicates its salvage claim "on its hope of future recoveries." (*See* Foster Reply at 1.) Rockfish does not dispute that it has only recovered a firebrick and piece(s) of wood.[4] (Rockfish Resp. at 2 (citing Am. Compl. ¶ 3.6; 10th Hummel Decl. (Dkt. # 162) ¶ 5).) Relying on the court's February 12, 2025 order denying LMI's motion to dismiss and set aside the Settlement Agreement, Rockfish argues that the court already adjudicated its right to a salvage award and extended its exclusive salvage rights and preliminary injunction through the January 2027 trial date. (Rockfish Resp. at 3-4.) The court agrees with Mr. Foster that Rockfish has not demonstrated success in whole or in part and is thus not entitled to a salvage award.

---

[4] The parties dispute the amount of wood recovered, but resolution of this issue is not material to the outcome of the case.

To support its contention that recovering the wood and firebrick constitutes "success in part," Rockfish relies primarily on *Smith v. The Abandoned Vessel*, 610 F. Supp. 2d 739 (S.D. Tex. 2009) and *Odyssey Marine Expl., Inc. v. Shipwrecked & Abandoned SS Mantola*, 425 F. Supp. 3d 287 (S.D.N.Y. 2019). (Rockfish Resp. at 8.) Neither case, however, supports Rockfish's position. In *Smith*, an amateur treasure hunter brought an *in rem* admiralty action seeking salvage rights to a purported shipwreck buried on private land. 610 F. Supp. 2d at 742-43. The court rejected the plaintiff's salvage claim because—armed with only a piece of wood, his own testimony, and a photocopied photograph of an object he claimed was a piece of wood from the vessel—he presented insufficient evidence that the ship was located at the claimed site and, even assuming he had discovered it, failed to show that "he has reduced the shipwreck to his possession." *Id.* at 755 (citation omitted).

In *Mantola*, plaintiff Odyssey initiated an *in rem* admiralty action to secure exclusive salvage rights over the shipwreck *S.S. Mantola* and established constructive jurisdiction by arresting a single piece of silk cloth recovered from the site. 425 F. Supp. 3d at 290. Odyssey later moved for summary judgment, seeking a salvage award of both the cloth and 526 silver bars believed to be among the vessel's cargo. *Id.* at 293-95. The court awarded Odyssey title to the recovered cloth but denied relief as to the unrecovered silver bars. *Id.* at 296-97. Although the parties agreed that the bars had been turned over to UK authorities, the court emphasized that Odyssey bore the burden of presenting affirmative, competent evidence that the bars remained on the wreck when the court took jurisdiction to demonstrate success. *Id.*

Rockfish asserts that these cases demonstrate that "[r]ecovery of property can establish success in part[,]" contending that its recovery of the firebrick and wood is similar to Odyssey's recovery of the silk cloth. (Rockfish Resp. at 8.) As Mr. Foster correctly observes, however, neither *Smith* nor *Mantola* supports that leap. (Foster Reply at 3.) In *Smith*, the court denied the salvage claim altogether despite the plaintiff's recovery of a piece of wood. 610 F. Supp. 2d at 755. And in *Mantola*, the court granted relief solely as to the recovered silk cloth while denying any award for the unrecovered silver bars. 425 F. Supp. 3d at 296-97. At most, therefore, recovering an isolated artifact may support a claim to that specific item; it does not establish "success in part" entitling a salvor to a salvage award over separate, unrecovered cargo or wreckage.

Furthermore, the authority Rockfish cites to show "recovery of property is not the only means to establish success in part" is unavailing. (Rockfish Resp. at 8-9.) Rockfish cites *In re Dorothy J v. City of New York*, 749 F. Supp. 2d 50 (E.D.N.Y. 2010), in which the court awarded salvage compensation to a tugboat crew whose immediate presence alongside a damaged Staten Island Ferry comforted passengers and crew, even though the tug did not materially contribute to the ferry's safe return. *Id.* at 68-70. In *Dorothy J*, however, the distressed vessel and its passengers were saved and returned safely to the slip—satisfying the foundational requirement that the imperiled maritime property be successfully preserved for its owner. *Id.* at 78; *see Evanow*, 163 F.3d at 1115. Here, by contrast, no vessel or cargo has been rescued or preserved; instead, Rockfish seeks to substitute ongoing search efforts and the recovery of minor debris for actual salvage success over unrecovered property.

Nor do the court's prior interlocutory orders excuse Rockfish from establishing salvage success at this stage. First, Rockfish relies on the court's January 26, 2024 order granting Rockfish and LMI's stipulated motion to incorporate their prior agreement, arguing that because the cargo insurer effectively selected Rockfish in that context, the court must set aside governing salvage law. (Rockfish Resp. at 6-7 (citing 1/26/24 Order at 3).) A private settlement between Rockfish and LMI, however, neither binds third-party claimants like Mr. Foster nor alters the substantive elements required to establish a maritime salvage claim. That order merely incorporated the parties' stipulated arrangement and preserved Rockfish's contractual window to attempt salvage; it did not adjudicate the merits of Rockfish's claim or excuse Rockfish from demonstrating actual salvage success.

Second, Rockfish points to the court's February 12, 2025 order denying LMI's motion to dismiss contending that the court already recognized its right to pursue a salvage award. (Rockfish Resp. at 6-7.) Denying a motion to dismiss as premature early in the litigation, however, merely allows a plaintiff time to develop its claims; it does not relieve the plaintiff of its evidentiary burden at summary judgment once discovery closes.

For similar reasons, the court declines Rockfish's request to defer ruling on summary judgment until November 30, 2026, so that it may submit a supplemental declaration presenting the results of salvage operations conducted in late October 2026. (Rockfish Resp. at 15; *see* 10th Hummel Decl. ¶¶ 11, 15.) Discovery in this matter is closed (*see* Sched. Order (Dkt. # 124)), and Rockfish expressly states that it is not moving to reopen discovery (Rockfish Resp. at 15). Nor has Rockfish satisfied Federal

Rule of Civil Procedure 56(d), which requires a party seeking to defer consideration of a summary judgment motion to show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. *See* Fed. R. Civ. P. 56(d). Rockfish's speculation that unreviewed results from post-discovery operations *might* bear on salvage success is insufficient to warrant delaying resolution of Mr. Foster's motion. Accordingly, the court evaluates the motion on the existing summary judgment record.

That record—including Rockfish's own progress reports—confirms that Rockfish has failed to establish salvage success in whole or in part. In its status report dated November 9, 2026—filed four years after it initiated this action and more than a decade after it began searching for the Vessel—Rockfish confirmed that it has completed 20 expeditions to the wreck site and outlined several bases for identifying the site as the remains of the *S.S. Pacific*. (11/9/26 Sts. Rpt. (Dkt. # 164) at 2-11; *see also* Am. Compl. ¶¶ 2.1, 3.3, 3.5 (alleging that Rockfish incorporated in March 2016 to locate the *S.S. Pacific*, believed it had located the wreck in the summer of 2021, and filed suit in November 2022).) Yet although the 20-page status report asserts that "Rockfish is satisfied that the wreck site represents the remains of the *S.S. Pacific*" and details Rockfish's ongoing exploration efforts, Rockfish admits that it has recovered no other artifacts beyond the wood and firebrick it obtained before filing this lawsuit. (*See generally* 11/9/26 Sts. Rpt.; *see also* Foster Reply at 4 (contending that, although "Rockfish claimed in May 2026 that it had mapped more than 450 objects on the seafloor, [it] offers no explanation for why it has failed to recover any of those objects since") (citing 5/12/26 Sts. Rpt. (Dkt. # 151) at 2).) Under settled admiralty law,

locating, identifying, and exploring a sunken vessel—however diligently—does not constitute salvage success absent the actual recovery and preservation of imperiled property. *See The Sabine*, 101 U.S. at 384; *Evanow*, 163 F.3d at 1115. Because Rockfish's own filings confirm that it has recovered no cargo or other property after 20 expeditions, Rockfish cannot raise a genuine dispute of material fact on the third element of its salvage claim. Therefore, the court grants Mr. Foster's motion for summary judgment on Rockfish's salvage claim.

2. Law of Finds Claim

Mr. Foster also moves for dismissal of Rockfish's claim under the law of finds. (Foster MSJ at 9-11; Foster Reply at 6-8.) At the outset, the court notes that "[t]he law of finds is disfavored in admiralty," and courts strongly favor applying the law of salvage instead. *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 460 (4th Cir. 1992) (quoting *Hener v. United States*, 525 F. Supp. 350, 356 (S.D.N.Y. 1981)); *see also Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 671 (5th Cir. 2000) ("[T]here are only a handful of cases applying the law of finds."). To prevail on a claim under the law of finds, a claimant bears the burden of establishing three elements: "(1) intent to reduce property to possession; (2) actual or constructive possession of the property; and (3) that the property is either unowned or abandoned." *Smith*, 610 F. Supp. 2d at 753 (citation omitted).

Rockfish's law of finds claim fails for the same reason as its salvage claim. Having recovered nothing beyond a firebrick and wood over 20 expeditions, Rockfish has failed to present competent evidence that it has reduced the Vessel or its cargo to

actual or constructive possession—much less to establish that any unrecovered property on the seabed has been abandoned by its owners. *See Smith*, 610 F. Supp. 2d at 755 (rejecting law of finds claim where plaintiff presented no credible evidence that he reduced any abandoned property to his possession); *Mantola*, 425 F. Supp. 3d at 296-97 (awarding title under the law of finds only to a recovered piece of silk cloth, not to unrecovered cargo). Because Rockfish cannot raise a genuine dispute of material fact on these essential elements, Mr. Foster is entitled to summary judgment on Rockfish's law of finds claim.

3. <u>Request for Injunctive Relief</u>

Finally, Mr. Foster moves to dissolve the preliminary injunction granting Rockfish exclusive salvage rights over the wreck site. (Foster MSJ at 12.) District courts possess the "inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002). A party seeking to dissolve a preliminary injunction "bear[s] the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019).

Mr. Foster has carried that burden here. Rockfish's exclusive salvor status is derivative of its substantive salvage claim. *Moyer v. Wrecked & Abandoned Vessel*, 836 F. Supp. 1099, 1106 (D.N.J. 1993) ("For a preliminary injunction to issue where the court already has issued an initial arrest order, and the preliminary injunction is designed to protect salvage operations, the "salvor's efforts must be (1) undertaken with due diligence, (2) ongoing, and (3) clothed with some prospect of success.") A preliminary

injunction in an *in rem* salvage action protects a salvor's ability to conduct recovery operations without interference while its salvage claim is pending; it does not confer an independent substantive right to exclusive control over the seabed. *See R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 532-35 (4th Cir. 2006). As the Fourth Circuit has explained, "[a] salvor may be granted possession of a wreckage site to prevent interference with salvage operations conducted on behalf of the owner, but no similar equity entitles a finder to have exclusive access to obtain title to unowned property." *Id*. at 535.

Because the court grants summary judgment against Rockfish on its salvage claim, the legal predicate for maintaining Rockfish's exclusive salvor status no longer exists, constituting a significant change in circumstances that warrants dissolution of the preliminary injunction. Accordingly, the court grants Mr. Foster's motion and dissolves the preliminary injunction.

4. <u>Request for Declaratory Judgment</u>

Rockfish contends that summary judgment cannot dispose of this action entirely because Mr. Foster has not moved for summary judgment on its claim for a declaratory judgment establishing ownership of the Vessel by assignment. (Rockfish Resp. at 5-6.)

Mr. Foster acknowledges that he "asserts no ownership interest in the [V]essel itself and therefore has no standing to challenge Rockfish's claimed title to the [V]essel." (Foster Reply at 12 (citing *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057-58 (9th Cir. 1994)).) Instead, Mr. Foster's motion challenges only Rockfish's ability to maintain claims under the laws of salvage and finds. (*See generally* Foster

MSJ.) The existence of a separate, unchallenged claim regarding vessel ownership neither cures those evidentiary deficiencies nor precludes partial summary judgment.

*Bemis v. RMS Lusitania*, 884 F. Supp. 1042 (E.D. Va. 1995), *aff'd*, 99 F.3d 1129 (4th Cir. 1996), is instructive. There, the plaintiff acquired title to the *RMS Lusitania* by assignment and sought a declaration of ownership, exclusive salvage rights, and an injunction barring competing salvage operations. *Id.* at 1044-46. The district court declared, and the Fourth Circuit affirmed, that the plaintiff owned the vessel—including its hull and appurtenances—but held that his title did not extend to separately owned cargo and personal effects, and it denied exclusive salvage rights and injunctive relief over the unrecovered contents. *Id.* at 1053-54; *see also Bemis*, 99 F.3d at 1129.

Here, as in *Bemis*, the survival of Rockfish's uncontested claim for declaratory relief regarding ownership of the *S.S. Pacific* itself does not prevent the court from dismissing Rockfish's deficient salvage, law of finds, and injunctive relief claims. Because Mr. Foster does not challenge Rockfish's declaratory judgment claim regarding ownership of the Vessel itself, that claim is not resolved by Mr. Foster's motion for summary judgment. As explained below, however, the dismissal of Rockfish's *in rem* salvage and finds claims raises substantial questions regarding whether the court retains subject-matter jurisdiction over this standalone declaratory judgment claim.

The court now turns to Rockfish's motion for partial summary judgment.

**C. The Court Denies Rockfish's Partial Motion for Summary Judgment.**

Rockfish moves for partial summary judgment dismissing Mr. Foster's claims — asserted both individually and as administrator of Garesche's estate—to cargo carried

aboard the Vessel. (Rockfish MSJ at 1-2.) Specifically, Rockfish contends that: (1) with respect to the gold, "Mr. Foster has not and cannot identify any evidence that [Garesche] owned any part of the gold" or "any other cargo aboard"; and (2) with respect to any individual claims, Mr. Foster's claims fail as a matter of law because the Supreme Court of British Columbia probated Garesche's will, leaving his entire estate to his wife, Clara Garesche. (*Id.*) In the alternative, Rockfish seeks dismissal of Mr. Foster's individual claims to the gold cargo. (*Id.*) Rockfish does not challenge Mr. Foster's asserted interest in recovering Garesche's remains and personal effects. (*Id.*) In response, in pertinent part, Mr. Foster contends that granting his motion for summary judgment "would obviate the need to adjudicate [his] ownership interests" and that "Rockfish has not established a sufficient interest in the disputed cargo to challenge [his] ownership claims, and the Court lacks in rem jurisdiction over the unrecovered cargo located at the bottom of the ocean in international waters." (Foster Resp. at 2.) The court again agrees with Mr. Foster and denies Rockfish's motion for three independent reasons.

First, the motion is moot in light of the court's dismissal of Rockfish's salvage, law of finds claims, and dissolution of the preliminary injunction. *See supra Section* B. Because Mr. Foster appeared in this action to protect his asserted interests against Rockfish's claims to salvage awards, title by finds, and exclusive salvage rights over the wreck site, granting summary judgment in Mr. Foster's favor on those claims obviates any need to adjudicate the validity or scope of Mr. Foster's ownership interests in the cargo.

Second, Rockfish lacks standing to challenge Mr. Foster's ownership claims to the disputed cargo. Just as Mr. Foster lacks standing to contest Rockfish's claimed title to the Vessel itself, Rockfish asserts no pre-existing ownership interest in the gold or other third-party cargo aboard the *S.S. Pacific*—and with its salvage and law of finds claims dismissed, Rockfish holds no legally cognizable interest in that cargo. Rockfish's sole remaining interest in this litigation is its uncontested claim to ownership of the Vessel's hull and appurtenances by assignment—an interest that confers no title to or standing over separately owned cargo. *See Bemis*, 884 F. Supp. at 1053-54; *$191,910.00 in U.S. Currency*, 16 F.3d at 1057-58.

Third, the court lacks *in rem* jurisdiction to adjudicate competing ownership claims to unrecovered cargo resting on the seabed in international waters. As explained above, an admiralty court's *in rem* jurisdiction depends on actual or constructive possession of the *res*, and tendering minor debris such as a firebrick and wood does not bring unrecovered third-party cargo in international waters within the court's constructive possession for purposes of determining title. *See R.M.S. Titanic v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999); *Mantola*, 425 F. Supp. 3d at 296-97. For each of these reasons, Rockfish has failed to carry its burden of demonstrating that it is entitled to judgment as a matter of law on its claim of ownership over the unrecovered cargo and personal effects. *See* Fed. R. Civ. P. 56(a).

Rockfish argues that, even if the court lacks *in rem* jurisdiction over unrecovered cargo on the seabed, it may still adjudicate Mr. Foster's cargo claims because Mr. Foster appeared in this action and thereby consented to *in personam* jurisdiction. (Rockfish

Reply at 1-3.) That argument, however, conflates two distinct jurisdictional concepts. An admiralty action brought under Supplemental Rule C is a proceeding against the *res* itself, not a personal action against competing claimants. *See R.M.S. Titanic, Inc.* 171 F.3d at 957, 964. Indeed, under Supplemental Rule E(8), a claimant may enter a restricted appearance to defend against an *in rem* claim without submitting generally to the court's *in personam* jurisdiction for unrelated claims. Fed. R. Civ. P. Supp. E(8). More fundamentally, having personal jurisdiction over a claimant does not empower a federal court to adjudicate title to unrecovered property resting in international waters that is neither within the district nor within the court's actual or constructive possession. *See R.M.S. Titanic*, 171 F.3d at 964; *Mantola*, 425 F. Supp. 3d at 296-97.

Nor can Rockfish establish standing to challenge Mr. Foster's cargo claims by invoking the law of finds. (*See* Rockfish Reply at 3.) As explained above, the law of finds confers title only upon a finder who demonstrates both legal abandonment and actual or constructive possession of the property. *Smith*, 610 F. Supp. 2d at 753; *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 435 F.3d at 532 n.3. Because Rockfish has recovered nothing beyond a firebrick and wood and has failed to reduce any cargo to its possession, its law of finds claim fails as a matter of law. Having neither pre-existing title by assignment to third-party cargo nor a viable claim to acquire title under the law of finds, Rockfish lacks a legally cognizable interest in the disputed cargo sufficient to confer standing to challenge Mr. Foster's claims. *See $191,910.00 in U.S. Currency*, 16 F.3d at 1057-58; *Bemis*, 884 F. Supp. at 1053-54. Accordingly, the court denies Rockfish's motion for partial summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Foster's motion for summary judgment (Dkt. # 159) and DENIES Rockfish's motion for partial summary judgment (Dkt. # 156). The court ORDERS as follows:

(1) The court DISMISSES Rockfish's claims for a salvage award and title under the law of finds without prejudice to Rockfish reasserting such claims as warranted under admiralty law should it actually recover and preserve property from the wreck site;

(2) The preliminary injunction (Dkt. # 129) previously entered in this action is DISSOLVED and VACATED;

(3) The sole claim remaining in this action is Rockfish's request for a declaratory judgment that, by assignment from the successors in interest to the *S.S. Pacific*'s owner, Rockfish holds whatever ownership and possessory rights that owner held in the Vessel itself; and

//

//

//

//

//

//

//

//

(4) Because the court has dismissed Rockfish's *in rem* salvage and finds claims, and because no remaining claimant asserts an adverse ownership interest in the Vessel itself, the court ORDERS Rockfish to show cause by **Tuesday, December 8, 2026** why its remaining declaratory judgment claim should not be dismissed without prejudice for lack of *in rem* jurisdiction and for lack of a live Article III case or controversy.

Dated this 24th day of November, 2026.

JAMES L. ROBART
United States District Judge